UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

EMMANUEL VELAZQUEZ,
     Plaintiff,

vs.                          Case No.: 3:24cv175/MCR/ZCB

MICHAEL WILSON,
     Defendant.
_____/

## **REPORT AND RECOMMENDATION**

This is a *pro se* prisoner civil rights case filed under 42 U.S.C. § 1983. Plaintiff, Emmanuel Velazquez, is an inmate of the Florida Department of Corrections (FDOC). His amended complaint asserts Eighth Amendment claims of excessive force against FDOC Officer Defendant Michael Wilson. (Doc. 9). Defendant moved for summary judgment (Doc. 47), and Plaintiff responded in opposition (Doc. 52). For the reasons below, Defendant's motion for summary judgment should be granted.

## I.    Factual Background

### A.    Plaintiff's version of events[1]

On May 5, 2023, around 8:00 a.m., Plaintiff was in his dorm at Century Correctional Institution. (Doc. 9 at 5). He claims he was "actively engaging in drafting grievances" in his cell when Defendant sprayed him with a chemical agent. (*Id.*). Plaintiff claims he tried to reach the security port on his cell door to submit to handcuffs, but Defendant reached his arm through the door and "lacerated Plaintiff's right hand, with an unknown object, causing Plaintiff's finger to bleed and he felt pain throughout his arm." (*Id.*). Plaintiff claims Defendant applied another round of pepper spray after Defendant cut his finger. (*Id.*).

A supervisor then appeared and took Plaintiff to a decontamination shower and a post-use-of-force examination by the medical staff. (*Id.* at

---

[1] Plaintiff's version of events is taken from his amended complaint, which was signed under penalty of perjury. (Doc. 9 at 13). Plaintiff's response to the motion for summary judgment is unsworn. Thus, the Court cannot rely on it. *See Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003) ("Unsworn statements do not meet the requirements of Fed. Rule Civ. Proc. 56(e) and cannot be considered by a district court in ruling on a summary judgment motion.") (cleaned up).

5-6). During the examination, Plaintiff claims the nurse documented the injury to his finger. (*Id.* at 6). Plaintiff claims he suffers from permanent nerve damage, arthritis, muscle spasms, uncontrollable twitching, and movement restriction in his finger because of Defendant's actions. (*Id.*). According to Plaintiff, Defendant used excessive force in violation of the Eighth Amendment. (*Id.* at 7). Plaintiff seeks compensatory and punitive damages. (*Id.*).

## B. Defendant's version of events

Defendant tells a different story about what happened. Defendant states that on May 5, 2023, at approximately 7:45 a.m., he was monitoring Plaintiff because of "continued disorderly conduct." (Doc. 49-1 at 3-4). Plaintiff had his property removed a few days before, and he was in his cell with none of his personal property. (Doc. 49-6 at 13). That morning, Plaintiff flooded his cell and refused to submit to hand restraints. (Doc. 49-1 at 4).

Around 7:58 a.m., Plaintiff began using a sheet from his mattress to try to activate the fire sprinkler in his cell. (*Id.*). Specifically, Defendant states Plaintiff stood on the toilet in his cell and began throwing the sheet at the sprinkler. (*Id.*). Defendant ordered Plaintiff to

3

stop, but Plaintiff continued until the sheet was tangled in the sprinkler. (*Id.*).  Defendant responded by spraying a chemical agent through the handcuffing portal of the cell door to stop Plaintiff from activating the sprinkler.  (*Id.*).  After Defendant sprayed the chemical agent, the sheet fell to the ground.  (*Id.*).

Sergeant Timothy Adkison, a supervisor, arrived at the cell.  He ordered Plaintiff to submit to hand restraints.  (*Id.*).  Plaintiff did not comply with Sergeant Adkison's order.  (*Id.*).  Instead, Plaintiff picked up the sheet, stepped back on the toilet, and resumed his efforts to activate the sprinkler.  (*Id.*).  Sergeant Adkison ordered Plaintiff to get off the toilet.  (*Id.*).  Plaintiff caught the sheet on the sprinkler a second time, and he began pulling on the sheet.  (*Id.*).  Sergeant Adkison handed Defendant his chemical spray cannister, and Defendant used it to spray a chemical agent into Plaintiff's cell a second time.  (*Id.*).  Plaintiff then stopped his attempt to activate the sprinkler.   (*Id.*).

Next, Plaintiff submitted to hand restraints and was taken to a decontamination shower.  (Doc. 47 at 4).  He was also assessed by the medical staff during a post-use-of-force exam.  (*Id.*).   During that exam, the nurse noted that Plaintiff complained of a cut to his finger.  (Doc. 49-

5 at 362).   But the nurse wrote that there was only a "superficial laceration" to his right-hand ring finger "with no active bleeding."  (*Id*.). The nurse instructed Plaintiff to keep his finger clean and to watch for any signs of infection.  (*Id*.).

Ten days later, Plaintiff submitted a sick call request complaining of "internal pain to his right wedding finger."  (Doc. 49-5 at 347-49).  He denied the pain radiated and rated his pain a 5 out of 10.  (*Id*. at 347-48). He admitted to being able to bend and straighten the joint.  (*Id*. at 348). The nurse noted no swelling or difference in skin temperature.  (*Id*.).  She recommended acetaminophen and instructed Plaintiff to return if he had any new symptoms.  (*Id*.).  This was the only sick call Plaintiff requested about his finger.  (*See* Doc. 49-5).

## C.    Video evidence

In support of his motion for summary judgment, Defendant has provided two videos.   The first is a fixed wing camera view of the dormitory hallway. (Doc. 49-2).  The footage begins at 7:58 a.m., and here is what it shows.

When the video starts, water can be seen flowing out of Plaintiff's cell and pouring into the hallway.  (7:58:00).   Defendant approaches

Plaintiff's cell to look through the window.  (7:58:18-7:58:55).  He then backs away from the cell—out of the way of the water pooling by Plaintiff's cell door.  Defendant continues to watch Plaintiff from that vantage point.  (7:58:55).  Plaintiff attempts to shut the handcuffing portal from inside his cell.  (7:59:10-7:59:35).  Defendant approaches the cell to see what Plaintiff is doing.  (7:59:58).  Defendant then opens the handcuffing portal, but Plaintiff appears to stick his hand out of the portal.  Defendant flinches back, then sprays chemical agent through the handcuffing portal.  (8:00:00-8:00:20).

After Defendant sprays the chemical agent, Sergeant Adkison approaches Plaintiff's cell.  (8:00:27).  Although the handcuffing portal is open, Plaintiff does not place his hands through the handcuffing portal.  Sergeant Adkison says, "He's doing it again."  (8:00:38-41).  Sergeant Adkison then hands his chemical spray cannister to Defendant, who reaches in Plaintiff's cell via the handcuffing portal and sprays Plaintiff's cell a second time.  (8:00:35-8:00:45).  Plaintiff can be seen in the front corner of his cell while Defendant administers the spray.  (8:00:41).

Defendant then walks away while Sergeant Adkison remains by Plaintiff's cell.  (8:00:45-8:01:25).  More officers arrive, and one of them

talks to Plaintiff through his cell and asks if he will submit to restraints.
(8:01:25-8:01:35).  The officer walks away and returns several minutes
later with Sergeant Adkison, who is holding a handheld camera.
(8:07:35).  The fixed wing video continues for several minutes.  The
remainder of the video shows Sergeant Adkison continuing to record
Plaintiff with the handheld camera, Plaintiff being escorted to a
decontamination shower, and other inmates and officers cleaning the
water and chemical spray from Plaintiff's cell.  The video ends at 8:39
a.m.

 The second video is footage from the handheld camera.  (Doc. 49-4).
The recording began at 8:07 a.m., after the use of force.  (0:18).  This video
shows an officer unlocking the handcuffing portal and asking Plaintiff
whether he will submit to hand restraints and come out of his cell for a
decontamination shower.  (1:00-1:05).  Plaintiff does not comply.  (1:12-
1:22).  The officer tells Plaintiff to either submit to restraints so that he
can be escorted to a decontamination shower, or else a cell extraction
team will remove him from the cell.  (1:22-1:30).  Plaintiff does not comply
and talks back to the officer.  (*Id.*).  The officer walks away.  (1:30).  The
video continues.  Plaintiff stands in front of his cell window talking, but

it is unclear what he is saying. (1:30-1:48). He begins signing in front of the window with his right hand. (1:52). His right hand is clearly visible through the window, and it appears uninjured. There is no indication of blood on his hand.

The officer then returns with a nurse. (17:21). The nurse tells Plaintiff how important it is to decontaminate, and she states that she will assess Plaintiff after he has a decontamination shower. (17:26-18:13). The officer unlocks the handcuffing portal and tells Plaintiff again to submit to hand restraints. (18:40-18:49). This time, Plaintiff complies. (18:45-19:20). When the door to Plaintiff's cell is opened, the video shows that the cell is floor is covered with water. (20:58).

Plaintiff is then escorted to a decontamination shower. (21:38-22:00). After the shower, Plaintiff is provided a new pair of boxer shorts and escorted to medical for a post-use-of-force exam. (31:48-32:00). Plaintiff is examined by the nurse. (32:36). The nurse looks at Plaintiff's hand (37:02), but she does not dress or bandage it. Plaintiff is then escorted back to his cell. (39:00-41:00). The video ends at 8:49 a.m. (41:30-41:35).

## II.    Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.*

At bottom, the summary judgment question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.  When answering that question, courts view the evidence in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  But the nonmoving party bears the burden of coming forward with sufficient evidence on each element.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A mere "scintilla" of evidence is insufficient to meet that burden.  *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004).  Likewise, speculation or

conjecture cannot create a genuine issue of material fact.  *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

When the plaintiff's version of events is "blatantly contradicted" by the record, a court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott*, 550 U.S. at 380. Thus, when a video recording of an incident clearly contradicts the plaintiff's version of events, the court views the evidence in the light depicted by the video.  *Id.* at 380-81.

### III.   Discussion

Plaintiff claims Defendant violated the Eighth Amendment by using excessive force against him—namely, by maliciously and sadistically applying chemical spray and by lacerating his finger with an unknown object.  (Doc. 9 at 5).  In his motion for summary judgment, Defendant argues that Plaintiff has failed to come forward with evidence from which a reasonable jury could find a constitutional violation.  The Court agrees with Defendant.

The "core judicial inquiry" in considering an Eighth Amendment claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause

harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). "When prison officials maliciously and sadistically use force to cause harm," the Supreme Court recognized, "contemporary standards of decency always are violated . . . . whether or not significant injury is evident." *Id.* at 9.

To determine whether the application of force was done in good faith or maliciously and sadistically, courts are required to consider the following factors: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted upon the prisoner; (4) the extent of the threat to the safety of staff and inmates; and (5) any efforts to temper the severity of a forceful response." *Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019) (cleaned up). From the consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley v. Albers*, 475 U.S. 312, 321 (1986). An inmate who has brought an excessive force claim "may avoid summary judgment only if the evidence viewed in the light most favorable to him goes beyond a mere dispute over the reasonableness of

the force used and will support a reliable inference of wantonness in the infliction of pain." *Ledlow v. Givens*, 500 F. App'x 910, 913 (11th Cir. 2012) (cleaned up).

Applying the factors set forth above, Defendant is entitled to summary judgment because the evidence before the Court does not support a reliable inference of wantonness in the use of force. Before looking at the factors individually, it is important to point out that the video evidence clearly contradicts the version of events that Plaintiff has set forth in his complaint. More specifically, the video shows that Plaintiff was not "actively engag[ed] in drafting grievances" when Defendant sprayed him with chemical spray. Nor does the video show Defendant "reach[ing] his arms through the port [to] lacerate Plaintiff's right hand." (Doc. 9 at 5). Rather, the video shows Plaintiff flooding his cell and refusing commands to submit to hand restraints. And the video shows that once Plaintiff finally complied with the instructions of officers, he was escorted from the cell, taken to a decontamination shower, given clean undergarments, and evaluated by a nurse. Because Plaintiff's version of events is blatantly contradicted by the video evidence, the

Court will "view[] the facts in the light depicted by the videotape." *Scott*, 550 U.S. at 381.

Turning now to the factors, the Court looks first to the need for the application of force. Contrary to Plaintiff's claim that he was in his cell "actively engaging in drafting grievances," (Doc. 9 at 5), when Defendant sprayed him with a chemical agent, the evidence in the record shows that Plaintiff was sprayed because he was flooding his cell and actively refusing commands.[2] The video evidence also refutes Plaintiff's claim that Defendant reached his arms through the portal to lacerate Plaintiff's finger with an object. At no point does the video show Defendant reaching into the cell with an object to lacerate Plaintiff's finger.

Defendant contends Plaintiff was attempting to trigger the sprinkler system to further flood his cell. To support his contention, Defendant has submitted his Use of Force Incident Report, which was

---

[2] Plaintiff admits in his deposition that his property—including his documents, pen, and paper—was taken out of his cell the morning of the incident. (Doc. 49-6 at 12). He states that he was in a "strip cell with no property," with "nothing but [his] boxers on" and that "[e]verything else was out of the cell" at the time force was used. (*Id.* at 13); *see also* (*id.* at 14) (admitting he did not have pen and paper in his cell to write with). This further corroborates what the video shows—i.e., Plaintiff was not "actively writing grievances" when Defendant sprayed chemical agent into his cell.

signed under penalty of perjury. (Doc. 49-1 at 7-9). The report states that Plaintiff was flooding his cell and repeatedly refusing to submit to hand restraints. (*Id.* at 7). Defendant further states Plaintiff retrieved a piece of sheet from under the mattress, stood on the toilet, and began to throw the piece of sheet at the sprinkler. (*Id.*). Defendant claims he ordered Plaintiff to stop, but Plaintiff continued until one end of the sheet was tangled in the sprinkler. (*Id.*). When Plaintiff saw Defendant approach, Defendant states Plaintiff "got down from the toilet and began to pull the piece of sheet, attempting to activate the fire suppression system." (*Id.*). Defendant says that is when he administered chemical agent. (*Id.*).

After the application of chemical agent, Defendant says the sheet fell to the ground. (*Id.*). Defendant states that Sergeant Adkison approached Plaintiff's cell and ordered Plaintiff to submit to hand restraints.[3] (*Id.*). Instead, Plaintiff picked up the piece of sheet and stepped back up onto the toilet. (*Id.*). Sergeant Adkison ordered Plaintiff

---

[3] Plaintiff does not deny that he was given an order to submit to hand restraints before the second round of chemical spray. (Doc. 9 at 5) (admitting that he "tried" to submit to hand restraints, but did not submit to the restraints before the second round of chemical spray).

14

to get off the toilet. (*Id.*). Plaintiff caught the piece of sheet on the fire suppression system, stepped down from the toilet, and began to pull on the piece of sheet. (*Id.*). Sergeant Adkison gave Defendant his chemical agent cannister, and Defendant applied a second stream of chemical agent. (*Id.*). After Defendant applied the second stream of chemical agent, Plaintiff stopped his attempts to activate the fire sprinkler and all force ceased. (*Id.*). The first factor, therefore, favors Defendant. *See Burke v. Bowns*, 653 F. App'x 683, 696 (11th Cir. 2016) (finding officer had a need to use chemical agent spray where inmate refused orders).

The Court now moves to the second and third factors, which are the relationship between the need and the amount of force that was used and the extent of any injury to the prisoner. An inmate flooding his cell and refusing to follow orders is disruptive of prison operations, and "[i]f the operations of a prison are disturbed, there is the potential for great risk to the safety of all involved." *White v. Irving*, No. 6:14cv77, 2016 WL 4787281, at *6 (S.D. Ga. July 6, 2016), *adopted by* 2016 WL 4766488 (Sept. 12, 2016). As the Eleventh Circuit has previously recognized, a short burst of pepper spray "[wa]s not disproportionate to the need to control an inmate who ha[d] failed to obey a jailer's orders." *Danley v.*

*Allen*, 540 F.3d 1298, 1304, 1307 (11th Cir. 2008).  According to the Eleventh Circuit,  the short burst of pepper spray was "a reasonable response to th[e] threat" of an inmate "creat[ing] a disturbance by failing to obey orders." *Id.* at 1308; *see also Orange v. Prescott*, No. 22-10955, 2024 WL 1156573, at *6 (11th Cir. Mar. 18, 2024) (explaining that the Eleventh Circuit has recognized that pepper spray is an accepted non-lethal means of controlling unruly inmates).  As in *Danley*, the two short bursts of chemical agent spray used in this case were not disproportionate to the need to control a disorderly inmate who had flooded his cell, was refusing to follow orders, and appeared to be tampering with the fire sprinkler system.

Additionally, the minor nature of Plaintiff's injuries supports the finding that the short bursts of chemical agent spray were a minimal amount of force.  *See Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011) (explaining that "the extent of injury is a relevant factor in determining whether the use of force could plausibly have been thought necessary under the circumstances and may be an indication of the amount of force applied."); *see also White*, 2016 WL 4787281, at *6 (explaining that "[w]hile injury and the amount of force are imperfectly

correlated, here the indisputably minimal injuries that Plaintiff suffered reveal that Defendant only applied minimal force.").

Plaintiff alleges he suffered permanent nerve damage, arthritis, muscle spasms, and limited range of motion to his right ring finger as a result of Defendant's use of force. (Doc. 9 at 6). But Plaintiff's claim is contradicted by the contemporaneously created medical records, which show he suffered only a superficial laceration to his right-hand ring finger with no active bleeding and no symptoms of an infection. (Doc. 49-1 at 12-14; Doc. 49-5 at 2, 362-63); *see Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) ("Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records."). Medical staff advised Plaintiff to keep the superficial laceration clean with soap and water and watch for signs of an infection. (Doc. 49-5 at 363). He was also advised to use sick call if he needed further medical attention. [4] (*Id.*).

---

[4] The accuracy of the medical records is not disputed in this case. Indeed, Plaintiff relies on the nurse's medical record in his verified complaint. (Doc. 9 at 6) (stating that the nurse "documented Plaintiff's wounded finger as a result of Defendant's malicious attack").

Moreover, video evidence immediately after the incident showed no apparent injuries to Plaintiff's finger.  Indeed, Plaintiff used his right hand to sign through the cell window for several minutes after the encounter. Two weeks later, Plaintiff submitted a sick call complaining of "internal pain to his right wedding finger."  (Doc. 49-5 at 351).  Upon examination, he denied that his pain radiated, rated his pain a 5 out of 10, denied numbness and tingling, was able to bend and straighten the joint, and presented no temperature changes or swelling.  (*Id.* at 347-48). Records do not show Plaintiff visited medical to complain of his finger again.  Nor is there anything in the medical records to show that he was diagnosed with any of the issues he claims resulted from his finger being cut.  The minor nature of Plaintiff's injuries supports the finding that Defendant did not use excessive force.

The Court now moves to the fourth factor, which requires a consideration of the extent of the threat to the safety of staff and inmates posed by Plaintiff.  Here, Plaintiff's flooding of his cell, refusal to follow instructions to submit to hand restraints, and attempts to tamper with the sprinkler system clearly posed a risk to the safe and secure operation of the prison.  And Defendant—by using two short bursts of chemical

18

spray—used a reasonable amount of force in response to Plaintiff's conduct. *See Ort v. White*, 813 F.2d 318, 325 (11th Cir. 1987) (stating that prison officials must "have the authority to use that amount of force or those coercive measures reasonably necessary to enforce an inmate's compliance with valid prison rules and to protect themselves and the other inmates"); *see also Carter v. McCullen*, No. 22-10499, 2023 WL 6120616, at *5 (11th Cir. Sept. 19, 2023) (finding that the use of chemical spray was not disproportionate to the need to control disorderly behavior and was a reasonable response to the threat of a disturbance created by failure to obey orders).

Finally, the last factor—efforts made to temper the severity of the use of force—also weighs in Defendant's favor. The effects of the chemical spray were tempered by officers removing Plaintiff from the cell and taking him to a decontamination shower once he agreed to hand restraints. Indeed, officers requested a nurse come and inform Plaintiff of the importance of a decontamination shower when Plaintiff continued to refuse orders to submit to hand restraints. Officers also provided Plaintiff with a medical exam after the use of force. The efforts to temper the severity of the use of force are something the Eleventh Circuit has

considered when evaluating this factor. *See Cockrell v. Sparks*, 510 F.3d 1307, 1312 (11th Cir. 2007) (stating that the prison guards' summoning of medical assistance for the inmate "tempered the severity of the forceful response and [made] it less likely that either of them was acting sadistically instead of in good faith") (cleaned up); *see also Orange*, 2024 WL 1156573, at *5-6 (stating that officers' taking inmate to a nurse and then permitting him to shower and decontaminate suggested an effort to temper the severity of the use of chemical spray); *Carter*, 2023 WL 6120616, at *5 (stating that officers' permitting inmate to cover his face, wash the affected areas of his body, and receive medical care after the use of chemical spray weighed in favor of officers in excessive force analysis). The final factor, therefore, weighs in favor of Defendant.

Having considered all the factors, the Court finds that no reasonable juror could conclude that Defendant applied force "maliciously and sadistically to cause harm." *Ledlow*, 500 F. App'x at 912. What happened in this case is a far cry from the type of egregious conduct that violates "contemporary standards of decency" as required for an Eighth Amendment violation. *See Hudson*, 503 U.S. at 9. Because the evidence in the record will not "support a reliable inference of

wantonness in the infliction of pain . . . the case should not go to the jury."

*Whitley*, 475 U.S. at 322.   Defendant, therefore, is entitled to summary

judgment on Plaintiff's excessive force claim.

## IV.   Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that:

1.    Defendant's  motion  for  summary  judgment  (Doc.  47)  be

**GRANTED**.

2.    The Clerk of Court be directed to enter judgment accordingly

and close this case.

At Pensacola, Florida this 22nd day of December 2025.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

## Notice to the Parties

Objections to these proposed findings and recommendations must
be  filed  within  fourteen  days  of  the  date  of  this  Report  and
Recommendation.  Any different deadline that may appear on the
electronic docket is for the Court's internal use only and does not
control.  An objecting party must serve a copy of the objections on all
other parties.  A party who fails to object to the magistrate judge's
findings or recommendations contained in a report and recommendation
waives the right to challenge on appeal the district court's order based on
unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28
U.S.C. § 636.

21